# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Jane Schneider,                         :
                           Petitioner        :
                                             :
              v.                             :     No. 2196 C.D. 2015
                                             :     Submitted:  March 11, 2016
Commonwealth of Pennsylvania,                :
Public School Employees'                     :
Retirement Board,                            :
                           Respondent        :


**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
           **HONORABLE ANNE E. COVEY,** Judge
           **HONORABLE JAMES GARDNER COLINS,** Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  July 14, 2016**


Mary Jane Schneider (Claimant), pro se, petitions for review of an Order of the Public School Employees' Retirement Board (Board) rejecting Claimant's request to purchase service and receive credit for 1.94 years of prior out-of-state school service.  Claimant argues that the Board erred when it determined that the two years she spent teaching in Ohio through the Teacher Corps program was not "school service" purchasable under the Public School Employees' Retirement Code (Retirement Code), 24 Pa. C.S. §§ 8101 - 8536.  Discerning no error, we affirm.

## I.    Background

Claimant retired on June 20, 2011, after teaching in Pennsylvania schools from 1976 to 1980 and again from 1993 to 2011.  (Board's Op., Findings of Fact (FOF) ¶¶ 57-58, 70.)  Prior to retiring, Claimant submitted two applications with the Public School Employees' Retirement System (PSERS) to purchase out-of-state service (together, "Application") related to the time she taught at the Meigs Local School District (MLSD) in Pomeroy, Ohio from 1974 to 1976.  (Board Op. at 2; FOF ¶¶ 71-72.)  Claimant received her teaching certification in Ohio in April 1974 and taught full-time as a "teacher-intern" at the MLSD high school through the federal Teacher Corps program from the fall of 1974 to the summer of 1976 while she was attending graduate school at Ohio University.  (FOF ¶¶ 4, 7, 20.)  The Board made the following findings of fact regarding Claimant's participation in the Teacher Corps program.

> 5.    Beginning in July 1974, Claimant attended graduate school at Ohio University, seeking a master's degree as a reading specialist. (N.T. 119-120)
>
> 6.    Claimant graduated in May 1976 with a Master's Degree as a Reading Specialist.  (N.T. 120, 151)
>
> 7.    In conjunction with her enrollment in graduate school at Ohio University, Claimant became an intern with Teacher Corps from 1974 through 1976.  (PSERS-1 at p. 4).
>
> 8.    The Teacher Corps program was created by federal statute, namely the Higher Education Act of 1965 (the "Act"),[1] for the

---

[1] Higher Education Act of 1965, Title V, §§ 511-17, Pub. L. No. 89-329, 79 Stat. 1219, 1255 (1965).  While Title V of the Higher Education Act of 1965 was never formally repealed, the Teacher Corps program was dissolved and consolidated into a block grant program effective October 1, 1982 pursuant to the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, 95 Stat. 357 (1981).  See House Conference Report No. 97-208, H.R. Rep. No. 97-208, 733

*(Continued…)*

2

purpose of "strengthen[ing] the educational opportunities available to children in areas having concentrations of low-income families and to encourage colleges and universities to broaden their programs of teacher preparation by . . . (2) attracting and training inexperienced teacher-interns who will be made available for teaching and inservice training to local educational agencies in such areas in teams led by an experienced teacher." (P.L. 89-329, 79 Stat. 1219, at § 511(a))

9.  The Act authorized arrangements between the local educational agencies and institutions of higher learning to provide, among other things, "teaching teams, each of which . . . consist[ed] of an experienced teacher and a number of teacher-interns who, in addition to teaching duties, shall be afforded time by the local educational agency for a teacher-intern training program . . ." and for "institutions of higher education to provide training for teacher-interns while teaching in schools for local educational agencies . . . leading to a graduate degree." (P.L. 89-329, 79 Stat. 1219, at §§ 513(a) and (b))

10. The Act authorized a program to "recruit, select and enroll experienced teachers and inexperienced teacher-interns who have a bachelor's degree or equivalent, in the Teacher Corps for periods of up to two years." (P.L. 89-329, 79 Stat. 1219, at § 513(a)(1))

11. The Act authorized "an arrangement made with a local educational agency . . . [to] provide for compensation . . . [to] a teacher-intern . . . at a rate which is equal to the lowest rate paid by such agency for teaching full time in the school system and grade to which the intern is assigned." (P.L. 89-329, 79 Stat. 1219, at § 514(a)(3))

12. The Teacher Corps program through which Claimant worked as an intern was operated by Ohio University. (N.T. 137).

13. Claimant first became aware of the Teacher Corps program through John Mangieri, a professor at Ohio University and the head of the Teacher Corps program at Ohio University. (N.T. 136-137)

_____

(1981) (Conf. Rep.) ("The Conference Agreement would limit appropriations for the Teacher Corps to $22.5 million in fiscal year 1982. Effective October 1, 1982, the Teacher Corps would be consolidated into the Block Grant").

14. The Teacher Corps program through Ohio University consisted of three requirements to be performed by "teacher-interns:" (1) taking courses in furtherance of a graduate degree with Ohio University, (2) performing in-classroom instruction at MLSD, and (3) performing community service. (PSERS-1 at p. 4, N.T. 135-136, 149-150)

15. Participation in the Teacher Corps program in which Claimant took part was only open to Ohio University graduate students. (N.T. 138, 139-140)

16. Claimant was one of the twenty graduate students at Ohio University who participated in the Teacher Corps program between the summer of 1974 and the spring of 1976. (N.T. 137, 139, 215-216)

17. MLSD encompassed all grades from kindergarten through twelfth grade. (N.T. 124)

18. When Claimant applied for the Teacher Corps program, she interviewed with Dr. Mangieri and a group of teachers from MLSD. (N.T. 137-138)

19. To take part in the Teacher Corps program, a student had to be at the top of his or her class and have an undergraduate degree with a teaching certification. (N.T. 137-138, 157, P.L. 89-329, 79 Stat. 1219, at § 513(a)(1))

20. While Claimant was a graduate student at Ohio University, she taught full-time at MLSD high school as a teacher-intern in the Teacher Corps program, from the fall of 1974 until the summer of 1976. (N.T. 16-17, 29-30, 150-151)

21. Claimant had no prior teaching experience or classroom instruction prior to graduate school other than her student teaching experience while an undergraduate student. (N.T. 47, 118-120, 123, 209)

22. While in the Teacher Corps, Claimant taught reading in grades 9-12 at MLSD. (N.T. 142)

23. Claimant's team leader was Jeanne Bowen, an MLSD employee, whose duties as team leader were for secondary education reading teachers of grades 9-12 at MLSD. (N.T. 142, 144)

4

24. Claimant's direct supervisor at MLSD was Jeanne Bowen with her next line of reporting to the principal of MLSD, James Diehl, who was in charge of the entire high school. (N.T. 124-143, 160, 214)

25. While most reading specialist students earned their degree in a single year, the twenty students selected to take part in the Teacher Corps program were placed into a two-year track where professors from Ohio University traveled to MLSD to hold graduate classes for the Teacher Corps students on-site at MLSD. (N.T. 146-147)

26. Ohio University professors would teach Claimant and the other teacher-interns the graduate reading courses at MLSD, with classes usually occurring in the evening during the school year, and in the summer. (N.T. 139-140, 146-147, 157-159, 216)

27. As part of the course work, these graduate classes specifically employed the students' teaching experiences at MLSD for case studies, and required regular meetings with Dr. Mangieri to discuss those teaching experiences as the students progressed through the graduate program. (N.T. 147-148)

28. The graduate courses Claimant took through Ohio University at MLSD after school hours and in the summer were for credit and to fulfill the requirements to earn a graduate degree as a reading specialist. (N.T. 48, 216)

29. Claimant would not have been paid if she failed to take graduate courses at Ohio University. (N.T. 149-150)

30. Claimant performed required community service as a part of the Teacher Corps program, where she visited families of students and did parent involvement programs such as "make-it, take-it" workshops. (N.T. 144)

31. Community service was a required part of Claimant's participation in the Teacher Corps program. (N.T. 144-145)

32. If Claimant did not perform the community service component, she would not have been a part of the Teacher Corps program. (N.T. 144-145)

33. Teachers at MLSD who were not a part of the Teacher Corps program were not required to do community service. (N.T. 145)

5

34. Claimant would not have been paid if she failed to perform the community service required for the Teacher Corps program. (N.T. 145)

35. Claimant's salary was not negotiated when she taught at MLSD. (N.T. 140)

36. The salary for all twenty graduate students who were teacher-interns at MLSD under the auspices of the Teacher Corps program was set by the Act, which required that "a teacher-intern shall be compensated at a rate which is equal to the lowest rate paid by such agency for teaching full time in the school system and grade to which the intern was assigned." (N.T. 140, P.L. 89-329, 79 Stat. 1219, at § 514(a)(3))

37. Claimant's salary was a similar salary to that of a first year teacher. (N.T. 37, 148)

38. Claimant's salary at MLSD was paid by federal grant monies from the Teacher Corps program. (N.T. 149, 160-161, PSERS-3)

39. The federal grant monies from the Teacher Corps program were given to MLSD, then combined with MLSD funds, with checks issued by MLSD to the teacher-interns based on the federal grant monies and not MLSD's own funds. (N.T. 25-26, 30-31, 109, 148-149, 160-162, PSERS-3)

40. Claimant's salary at MLSD was not a part of a financial aid package, institution waiver or housing waiver. (N.T. 38-39)

41. Following her graduation from Ohio University with a master's degree, Claimant did not obtain employment with MLSD. (N.T. 151)

42. If Claimant had not done all of the requirements of the Teacher Corps program she would not have been paid. (N.T. 149-150)

43. Claimant did not have a contract with MLSD. (N.T. 140)

44. Claimant did not have a contract with the Teacher Corps program. (N.T. 140)

6

45.   Claimant's teaching service at MLSD through the Teacher Corps program was for two years.  (N.T. 140-141, P.L. 89-329, 79 Stat. 1219, at § 513(a)(1))

46.   Claimant was required to remain with the Teacher Corps program for two years.  (N.T. 140-141, P.L. 89-329, 79 Stat. 1219, at § 513(a)(1))

47.   Claimant did not receive health insurance from MLSD or Ohio University.  (N.T. 141)

48.   The only benefits received by Claimant while at MLSD were "vacation, holiday and sick days."  (N.T. 219-222)

49.   Claimant received no information from MLSD concerning contributing to the State Teachers' Retirement System of Ohio ("STRSO").  (N.T. 141).

50.   Claimant was not part of a teachers' union while at MLSD.  (N.T. 141)

51.   Claimant's time in the Teacher Corps program ended with her earning a graduate degree from Ohio University as a reading specialist.  (N.T. 151)

52.   Upon the completion of her internship with the Teacher Corps program, Claimant does not recall being reimbursed for any unused sick time or vacation/personal time.  (N.T. 220-221)

53.   Claimant's plan after graduate school was to find a job.  (N.T. 120)

54.   Claimant was the head coach for girls' basketball and the assistant coach for girls' track at MLSD while she participated in the Teacher Corps program.  (N.T. 107, 122, 155)

55.   Claimant was not required to be a coach of any sport to be a part of the Teacher Corps program.  (N.T. 156, 163)

56.   Claimant received no scholarships, grants or financial aid to attend graduate school.  (N.T. 122)

(FOF ¶¶ 4-56 (alterations in original) (footnote omitted).)

PSERS notified Claimant by letter dated May 20, 2011, that it had denied Claimant's Application. (Id. at ¶ 87.) Claimant appealed the denial of her request to the Executive Staff Review Committee (ESRC) of PSERS by letter dated June 13, 2011. (Id. at ¶ 91.) The ESRC denied Claimant's appeal on the grounds Claimant's work with the MLSD was not in the context of an employer-employee relationship and that the STRSO indicated that the service does not qualify for service for participation in STRSO. (Letter from ESRC to Claimant, March 5, 2013, PSERS-6, C.R. at Item 12; FOF ¶ 94.) Claimant subsequently filed a timely Appeal and Request for Administrative Hearing with the Board. (FOF ¶ 95.)

Hearings were held before a Hearing Examiner on August 27, 2014 and November 13, 2014, where Claimant and Steven Wolf, Retirement Administrator over the purchase of service refunds for PSERS, testified.[2] Prior to the first hearing, Claimant "submitted a document to PSERS purporting to show that, as of May 2013, STRSO now permitted Claimant to purchase 1.94 years of service with MLSD." (Id. at ¶ 96.) While PSERS initially objected to the consideration of the document by the Hearing Examiner, the parties stipulated at the November 13, 2014 hearing that STRSO would certify to two years of service, which means that Claimant's service in Ohio met the one-year of service requirement of receiving out-of-state service pursuant to Section 8304(c) of the Retirement Code, 24 Pa. C.S. § 8304(c).[3] (Hr'g Tr., November 13, 2014, at 320-21, C.R. at Item 12.) The

---

[2] The transcript of the August 27, 2014 hearing can be found at Item 11 of the Certified Record. The transcript of the November 13, 2014 hearing can be found at Item 12 of the Certified Record.

[3] Pursuant to Section 8304(c) of the Retirement Code, 24 Pa. C.S. § 8304(c), school service in a public school of another state can only be credited if the service was conducted for at least one school year.

8

remaining issue before the Hearing Examiner was whether the service conducted in Ohio through the Teacher Corps program is of the type that is purchasable under Section 8303 of the Retirement Code, 24 Pa. C.S. § 8303. The Hearing Examiner issued an Opinion and Recommendation on July 6, 2015, concluding that Claimant's service at the MLSD through the Teacher Corps program was "school service" and recommended that the Board grant her request to purchase 1.94 years of out-of-state service. (Hearing Examiner Recommendation at 38-39.)

PSERS filed a brief on exceptions asking the Board to reject the Hearing Examiner's Opinion and Recommendation and find that the service Claimant performed through the Teacher Corps program was not purchasable for service credit. (PSERS' Br. on Exceptions at 5-6, C.R. at Item 22.) Claimant filed a responsive brief but did not file her own exceptions. (Claimant's Br. in Response to PSERS' Br. on Exceptions at 1, C.R. at Item 23.) PSERS argued that the Hearing Examiner misunderstood the relationship between Claimant and MLSD when it concluded that Claimant's service was school service. According to PSERS, Claimant was a graduate student taking part in a program directly tied to her studies, not an employee of the school. (PSERS' Br. on Exceptions at 15.) Claimant argued in response that she was a certified teacher when she worked at MLSD and taking classes in the evening with Ohio University did not render her any less of a teacher. (Claimant's Br. in Response to PSERS' Br. on Exceptions at 1.) Claimant contended that "it is the substance of the work that defines one's employment, not the administrative detail." (Id.)

## II. Board Decision

The Board independently reviewed the entire record and the briefs filed by the parties and concluded that Claimant was ineligible to purchase out-of-state service credit for the time she spent working at the MLSD under the purview of the Teacher Corps program. The Board first reviewed the relevant provisions of the Retirement Code and its interpretation thereof through PSERS' Business Rules and relevant precedent. According to the Board,

> An active member of PSERS may purchase credit and receive eligibility points toward retirement for previous creditable or noncreditable "school service" under [Section 8303(c) and (d) of the Retirement Code,] 24 Pa.C.S. § 8303(c)[,] (d). [Section 8102] of [t]he Retirement Code defines "school service" as "[s]ervice rendered as a school employee." 24 Pa.C.S. § 8102. It defines "school employee" as "[a]ny person engaged in work relating to a public school for any governmental entity and for which work he is receiving regular remuneration as an officer, administrator or employee. . . ." Id.
>
> . . . .
>
> Consistent with the Pennsylvania Supreme Court's analysis in Simmonds v. State Employees' Retirement System, 696 A.2d 801 (Pa. 1997), PSERS employs the rule that if service is to fall within the definition of "school service," and therefore entitled to service credit under the Retirement Code, the person who provides it must be an employee in the bargained-for exchange that exists in typical employment relationships.
>
> . . . .
>
> [T]he Commonwealth Court expanded on the Supreme Court's determination in Simmonds, ruling that Simmonds "sends a clear message that a court must examine the purpose of the program" in which a student is enrolled to determine if the student is an employee within the meaning of the Retirement Code. [Donovan v. State Employes' Retirement System, 701 A.2d 310, 313 (Pa. Cmwlth. 1997).]

(Board Op. at 16-18 (fifth, sixth, and seventh alteration in original).)

Consistent with <u>Simmonds</u> and <u>Donovan</u>, the Board next assessed the purpose of the Teacher Corps program and concluded:

> The Act had *two* stated purposes. While the language of the Act did speak to helping meet the needs of underserved school districts, it equally discussed a desire to train inexperienced teachers. Undoubtedly school districts such as MLSD that took part in this program were understandably concerned more with their staffing than with the education of the teacher-interns. Claimant, however, was a teacher-intern – and the Act was clear that, at least regarding the "teacher-interns," the focus of the program was on training inexperienced individuals to become better teachers. . . . Claimant's *entire participation in the program*, including her in-classroom instruction at MLSD, consisted of training – either through hands-on experience in the classroom or through coursework specifically tailored to the program.

(<u>Id.</u> at 21-22 (emphasis in original).)

The Board further concluded that Claimant's tenure at MLSD was that of a student, not a teacher. (<u>Id.</u> at 24.) In support of this conclusion, the Board pointed to the fact that Claimant was placed at MLSD by the Teacher Corps program and that Claimant did not have a contract with MLSD. (<u>Id.</u> at 23.) The Board further noted that Claimant was paid with federal grant money and did not receive employment benefits other than sick and vacation days. (<u>Id.</u>) Finally, the Board found it to be especially relevant that in order to participate in the Teacher Corps program, Claimant was required to take courses through Ohio University and perform community service in addition to teaching in the classroom. (<u>Id.</u>) According to the Board:

> Claimant testified that graduate studies at Ohio University, in-classroom instruction and community service were not optional, and if she failed to perform any of the three activities, *she would not have been paid*. Tying Claimant's compensation to all three requirements of her participation in this Teacher Corps program, including two requirements that had nothing to do with MLSD, exemplify the fact

11

that Claimant was not in the same position as any other full-time teacher at MLSD during that time, as she has argued, and therefore did not have a bargained-for exchange typically present in an employment relationship. Instead, Claimant was a student taking part in a program offered by her graduate school.

(Id. at 24 (citation omitted) (emphasis in original).) Accordingly, the Board denied Claimant's request to purchase 1.94 years of service. Claimant now petitions this Court for review.[4]

## III. Claimant's Appeal

On appeal, Claimant argues that the Board erred by: (1) misunderstanding the purpose and function of the Teacher Corps program; (2) misapplying the Supreme Court's holding in Simmonds and this Court's holding in Donovan to conclude that her work was not purchasable service; and (3) interpreting the relevant provision of the Retirement Code through Business Rule POS-2008-01 (Business Rule), which was in effect at the time of Claimant's Application, when the Business Rule is inapplicable to the facts of her case, and even if the Business Rule is applicable, it was misapplied.

Section 8303 of the Retirement Code permits active members of PSERS to purchase "credit and receive eligibility points" toward retirement for previous creditable (Section 8303(c)) and noncreditable (Section 8303(d)) school service. 24 Pa. C.S. § 8303(c), (d). "School service" is defined by Section 8102 of the Retirement Code as "[s]ervice rendered as a school employee." 24 Pa. C.S. §

---

[4] Our review of the final adjudication of an administrative board is limited to determining "whether the board committed an error of law, whether constitutional rights were violated, or whether necessary factual findings are supported by substantial evidence." Dowler v. Pub. Sch. Employes' Ret. Bd., 620 A.2d 639, 642 (Pa. Cmwlth. 1993).

8102. A "school employee" is defined by Section 8102 of the Retirement Code as "[a]ny person engaged in work relating to a public school for any governmental entity and for which work he is receiving regular remuneration as an officer, administrator or employee excluding, however, any independent contractor or a person compensated on a fee basis." Id. School service in a public school of another state can only be credited if the service was conducted for at least one school year. Section 8304(b) and (c) of the Retirement Code, 24 Pa. C.S. § 8304(b), (c). The Board interpreted Section 8303 according to PSERS' Business Rule and relevant precedent. (Board Op. at 16-17.) The Business Rule provided, in relevant part:

> ***Purchase of Service Eligibility: Student wage positions***
> Service should not be automatically denied because the member was a student at the time the service was rendered. Following are the guidelines to be used to determine if a member is eligible to purchase service rendered while a student at a university or state college. *Note - no one bullet point is dispositive; all information will be considered in rendering determinations of eligibility.*
>
> **Student service should be approved if:**
> - The position was not available to students only but was open to any qualified person
> - The relationship was employer/employee and was not teacher/student
> - The service was not part of the students' curriculum
> - The member has detailed Social Security earnings (the Office of the Governor as the employer is equally valid as having listed the State System of Higher Education, or the University, or State College itself as the employer of record.)
>
> **Student service should be denied if:**
> - The position was part of a financial aid package.
> - The member received a tuition waiver for the employment
> - The service was part of the student's curriculum
> - The member received academic credit for the employment

- The employment was only available to students, and no one from the outside workforce could fill the position in the absence of student applicants for the position(s)
- The position is that of a Graduate Assistant or a Resident Assistant

The member has the responsibility to provide proof of the position type. Such proof *may* come from the employer, or may be supplied by the member from [the member's] collection of employment history documents.

(Business Rule POS-2008-01, Ex. PSERS-A, C.R. at Item 13 (emphasis in original).)

The above interpretation of the Retirement Code has been adopted by the Board. "It is well settled that" the Board's construction of the Retirement Code in both its Business Rules and decisions "is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is clearly erroneous." Kirsch v. Pub. Sch. Employees' Ret. Bd., 929 A.2d 663, 668 (Pa. Cmwlth. 2007), aff'd, 985 A.2d 671 (Pa. 2009).

### A. Teacher Corps Program

Claimant first argues that determining whether a student is an employee within the meaning of the Retirement Code requires an assessment of the purpose of the program in which the student is enrolled. Claimant contends that the Teacher Corps was intended "'to strengthen the educational opportunities available to children in areas having concentrations of low-income families'" and that her work was focused on teaching these children. (Claimant's Br. at 3 (quoting Section 511 of the Act, P.L. 89-329, 79 Stat. 1219, 1255, at § 511(a)).)

Claimant is correct that determining whether a student is an employee under the Retirement Code requires an assessment of the purpose of the work performed.

14

Simmonds, 696 A.2d at 803. While we agree with Claimant that strengthening educational opportunities of students in underserved communities was one of the purposes of the Teacher Corps program, Claimant omits the other, equally important, purpose of the program as detailed in the Act itself. The Act states two purposes: (1) increasing educational opportunities available to children in underserved communities; and (2) "encourag[ing] colleges and universities to broaden their programs of teacher preparation by . . . attracting and training inexperienced teacher-interns who will be made available for teaching and inservice training to local educational agencies in such areas in teams led by an experienced teacher." Section 511(a) of the Act, P.L. 89-329, 79 Stat. 1219, 1255, at § 511(a). The Board correctly explained the Teacher Corps program as follows:

> The Act authorized arrangements between the local educational agencies and institutions of higher learning to provide, among other things, "teaching teams, each of which . . . consist[ed] of an experienced teacher and a number of teacher-interns who, in addition to teaching duties, shall be afforded time by the local educational agency for a teacher-intern training program . . ." and for "institutions of higher education to provide training for teacher-interns while teaching in schools for local educational agencies . . . *leading to a graduate degree*." Id. at §§ 513(a) and (b) (emphasis added). The Act permitted enrollment in the program for up to two years, failing to mandate or discuss placement of its teacher-interns in full-time positions following the completion of the program. Id. at § 513(a)(1).

(Board Op. at 20-21 (emphasis in original).) Because the Teacher Corps program, at least as it pertained to Claimant, was inextricably linked to the pursuit of a graduate degree, we agree with the Board's interpretation of the Act and conclude that the purpose of the Teacher Corps program is to both serve disadvantaged communities and to train teacher-interns who already have a bachelor's degree and are pursuing a graduate degree.

15

**B.** **Application of Simmonds and Donovan**

Claimant next contends that the Board misapplied the Supreme Court's decision in Simmonds and this Court's decision in Donovan in concluding that the time she spent with Teacher Corps program was not purchasable under the Retirement Code. In Simmonds, the Pennsylvania Supreme Court addressed a claim by a medical resident at the Milton S. Hershey Medical Center of Pennsylvania State University (Medical Center) seeking a certification in oncology. Simmonds, 696 A.2d at 801.[5] The resident provided patient care for 50 to 60 hours per week under the supervision of an attending Medical Center physician. Id. at 802. The resident received a small stipend of $16,932.00 to cover her expenses and received employee benefits, though the benefits were less generous than those received by other Medical Center physicians. Id. at 802 & n.3. After completing her residency, the resident became an assistant professor at the Medical Center, "enrolled in the State Employes' Retirement System (SERS)," and sought to purchase state credit for the one year of service she performed at the Medical Center as a resident. Id. at 802. SERS and the State Employes' Retirement Board (SERB) denied the claimant's request. Id. This Court reversed, holding that medical residents were state employees. Id. On appeal, the Pennsylvania Supreme Court reversed and reinstated SERB's decision. The Supreme Court's holding relied upon its understanding of the purpose of the resident's work at the Medical Center. According to the Court:

---

[5] This Court may utilize cases interpreting the State Employes' Retirement Code when interpreting similar provisions of the Retirement Code. Krill v. Pub. Sch. Employes' Ret. Bd., 713 A.2d 132, 134 n.3 (Pa. Cmwlth. 1998).

16

[Medical residents] are not primarily seeking monetary gain, but rather are attempting to fulfill educational requirements, either to initially practice medicine, or obtain certain specialties in the medical field. . . . .

[Phila. Ass'n of Interns & Residents v. Albert Einstein Med. Ctr., 369 A.2d 711, 714 (Pa. 1976)].

We agree with Appellants and find that this reasoning is equally applicable to the question of whether medical interns are employees pursuant to the Retirement Code. Here, Appellee was enrolled in an accredited educational program to obtain certification in the sub-specialty of oncology. The services rendered by Appellee were not structured solely to meet the hospital's needs but rather were to ensure that Appellee obtained the education and training required by the accrediting organization as a prerequisite to her certification. The stipend of $16,932.00 in exchange for the extensive medical services Appellee provided is clearly not the bargained-for exchange that exists in typical employment relationships.

Id. at 803-04 (footnote omitted).

Shortly after the Supreme Court issued its decision in Simmonds, this Court in Donovan addressed an appeal of a SERB decision denying a member's request to purchase credit for the time he attended the United States Military Academy at West Point (Academy) as a cadet. The claimant there attended the Academy for four years and obtained a bachelor's degree and was subsequently "commissioned as a second lieutenant in the United States Army." Donovan, 701 A.2d at 311. We applied the Supreme Court's holding in Simmonds by assessing the purpose of the claimant's time spent at the Academy. Id. at 313. We held that the claimant's time was not purchasable because it "served an educational purpose so that he could take his place as a member of the active military service in a position as a commissioned officer. Without his bachelor's degree from the Academy, [the

17

claimant's] commissioned officer status upon entry into active military service would not have been assured." Id.

Claimant argues that her case differs from Simmonds, and should lead to a contrary holding. Claimant argues that unlike her, the claimant in Simmonds: (1) did not attend school at night in addition to her day job; (2) needed the program to receive a certification; (3) was paid less than a market rate; and (4) participated in the residency program at the Medical Center solely to obtain a certification, and her primary motive was to teach. Similarly, Claimant contends that the factual differences between her case and Donovan should lead to a different result. According to Claimant, the claimant in Donovan sought to purchase the time he was actually in school at the Academy, not the time he worked outside of his class time.

Based on the facts in this case as found by the Board and the language of the Act, we agree with the Board that Claimant's role within MLSD is analogous to the claimant's role at the Medical Center in Simmonds. Like the claimant in Simmonds, Claimant here already had a basic certification to engage in her career, and enrolled in a program to obtain specialized training – here, a reading specialty through Ohio University, and in Simmonds, an oncology certification. Further, Claimant's compensation was set by statute and paid entirely by a federal grant, indicating that, like the claimant in Simmonds, there was no bargained-for exchange between employer and employee. Also like the claimant in Simmonds who spent her time at the Medical Center treating patients under the supervision of a physician, Claimant here spent her time at MLSD teaching under the supervision of another teacher. In both Simmonds and here, the work performed served two purposes: first, benefiting the population and institution the student served; and

18

second, furthering the claimant's educational goals. We therefore conclude that the Board did not err in determining that the purpose of Claimant's participation in the Teacher Corps program was educational and did not include the bargained-for exchange typically present in an employment relationship.

As in both <u>Simmonds</u> and <u>Donovan</u>, the purpose of the program at issue here was primarily educational. The fact that Claimant's subjective primary intent in joining the Teacher Corps program may have been to teach is not dispositive when the purpose of the Teacher Corps program includes providing educational opportunities to Claimant, and Claimant's relationship with MLSD was not that of an employer-employee. Thus, we observe no error in the Board's application of rules of law discussed in <u>Simmonds</u> and <u>Donovan</u> to the facts in this case.

### C. The Board's Interpretation through the Business Rule

Finally, Claimant argues that the Board should not have applied the Business Rule because it does not apply to her case, and even if it does apply, she should be considered an employee under the Business Rule.

We disagree that the Board should have not utilized the Business Rule. The Business Rule applies to situations where a claimant was a student at the time the service was rendered. There is no dispute that Claimant was a graduate student while she was teaching at MLSD under the purview of the Teacher Corps program and we concluded above that, based on the language of the Act, Claimant's teaching at MLSD was directly linked to her studies at Ohio University.

Further, we see no error in the Board's application of the Business Rule. The Board stated:

19

> Consistent with the Pennsylvania Supreme Court's analysis in Simmonds . . . , PSERS employs the [Business Rule] that if service is to fall within the definition of "school service," and therefore entitled to service credit under the Retirement Code, the person who provides it must be an employee in the bargained-for exchange that exists in typical employment relationships.

(Board Op. at 17.) The above passage, the only time the Business Rule is mentioned in the Board's analysis, notes that the relevant Business Rule is consistent with Simmonds in that the touchstone of the analysis focuses on the presence of a bargained-for exchange between the employer and the claimant. Relevant to this case, the Business Rule states that service should be denied if "the service was part of the student's curriculum," or if "the employment was only available to students." (Business Rule POS-2008-01, Ex. PSERS-A, C.R. at Item 13.) The Board found that Claimant's service at MLSD was related to her studies and that Claimant could not have taught at MLSD through the Teacher Corps program if she was not also a student and did not attend evening and summer classes. (FOF ¶¶ 25-29.) Because we conclude above that the Board did not err by concluding that Claimant is not eligible to purchase credit pursuant to Simmonds and Donovan, the Board's interpretation of the Retirement Code through PSERS' Business Rule is not clearly erroneous.

## IV. Conclusion

For the foregoing reasons, the Order of the Board is affirmed.[6]

_____

**RENÉE COHN JUBELIRER,** Judge

---

[6] Due to our disposition, we need not address the Board's request that we strike Claimant's proposed findings of fact and conclusions of law from her brief.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Jane Schneider,                                    :
                    Petitioner                          :
                                       :
                  v.                                    :        No. 2196 C.D. 2015
                                       :
Commonwealth of Pennsylvania,                          :
Public School Employees'                               :
Retirement Board,                                      :
                    Respondent                         :

## O R D E R

     **NOW**, July 14, 2016, the Order of the Public School Employees' Retirement Board, entered in the above-captioned matter, is hereby **AFFIRMED**.


                                      _____
                                        **RENÉE COHN JUBELIRER,** Judge